386 A.2d 81

**In the Interest of Angel DRESLINSKI, Appellant.**

Superior Court of Pennsylvania.

Argued April 12, 1977.

Decided April 28, 1978.

Robin Russel Vandercoy, Erie, with him J. P. Ogilvy, Erie, for appellant.

Dana Sherwood Jones, Erie, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is an appeal from an order of the Court of Common Pleas of Erie County, Juvenile Division, adjudicating appellant a delinquent child. Appellant contends, inter alia, that the adjudication of delinquency was illegal under the Juvenile Act.[1] We agree and reverse.[2]

On December 18, 1975, appellant was found to be a deprived child by Judge Anthony of the court below. Not long thereafter, on February 3, 1976, a petition was filed alleging appellant to be a delinquent child. The allegations of delinquency charged appellant with committing the crime of simple assault upon a fellow resident while in placement at the Children's Services Shelter Care. A hearing relative to the allegations of delinquency was conducted before a court-appointed master on March 26, 1976. On March 30, 1976, a dispositional hearing was held for appellant as a deprived child at which time Judge Anthony entered an order placing her at Sarah Reed Children's Center. At the conclusion of a dispositional hearing (relative to the delinquency petition) conducted on May 6, 1976, Judge Anthony

1. Act of December 6, 1972, P.L. 1464, No. 333, 11 P.S. § 50–101 et seq. (Supp.1977–78). Parenthetically, we note that many sections of the Juvenile Act have been amended by the Act of August 3, 1977, P.L. 155, No. 41. The instant proceedings, however, were commenced prior to the enactment of the amended act and are therefore controlled by the unamended Juvenile Act. Thus, all citations in this opinion refer to the unamended Juvenile Act.

2. In view of our disposition we find it unnecessary to address appellant's other assignments of error.

found appellant to be delinquent and again placed her at Sarah Reed Children's Center. This appeal followed.

■ Section 50–102(3) of the Juvenile Act, supra, defines a "delinquent child" as one "whom the court has found to have committed a delinquent act and is in need of treatment, supervision or rehabilitation." A "delinquent act" is, among other things,

"(i) an act designated a crime under the law of this State . . . ." 11 P.S. § 50–102(2)(i).

Section 50–320(b) of the Act provides in pertinent part:

"If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such finding on the record and it shall then proceed immediately or at a postponed hearing to hear evidence as to whether the child is in need of treatment, supervision or rehabilitation and to make and file its findings thereon."

In view of the foregoing provisions, we are of the opinion that before a child can be adjudged delinquent two conditions must be satisfied. Initially, there must be proof beyond a reasonable doubt that the child has committed a delinquent act. Secondly, the child must be "in need of treatment, supervision or rehabilitation."

As noted earlier, on May 6, 1976, a dispositional hearing was held for appellant as an alleged delinquent. The testimony adduced at this hearing was most favorable to appellant. The Unit Supervisor of Sarah Reed Children's Center—where appellant had been placed after having been adjudicated a deprived child—viewed appellant's stay at the Children's Center as "very productive." The caseworker who initiated the delinquency proceedings testified that "since [appellant's] placement at Sarah Reed I would say she has done remarkably well, maybe better than even expected at the time of her admission . . . the staff there has nothing but good things to say about her. It looks, at this point, like she has made real progress." Appellant's mother also testified as to the marked improvement in her daughter and expressed hope that appellant would be able to return

home in six months. Indeed Judge Anthony himself remarked: "Angel, the reports I've had on you from everyone so far in terms of your progress at Sarah Reed are excellent. Everyone speaks very highly as to what has occurred." In short, as appellant's brief argues, a possible basis exists for reversing the lower court's adjudication of delinquency on the grounds that it was not established that appellant was in need of any further treatment, supervision or rehabilitation other than that which she was currently receiving as a result of having been previously adjudged a deprived child. Nonetheless, we need not reach this question for a review of the record discloses a more fundamental reason for reversing; namely, the absence of a finding that appellant committed a delinquent act.

■ As previously noted, pursuant to Section 50–301 of the Act a master was appointed by the court to conduct a hearing on the allegations of the delinquency petition. At the conclusion of the hearing held on March 26, 1976, the master submitted a "Conclusion of Law" which states: "The Master feels that the evidence is sufficient to prove beyond a reasonable doubt that the defendant is guilty of simple assault." However, the master also filed the following "Recommendation":

> "That the allegation be sustained. However, the Master feels that because of this particular incident and the mitigating circumstances involved, *it was simply a technical violation and the juvenile should not be considered delinquent for it,* and it must be pointed out that this is only the Master's feelings and the Judge has the final decision." [Emphasis supplied.]

Subsequently, Judge Anthony entered the following order:

> "AND NOW, March 26, 1976, after hearing before the Master and upon his recommendation, it is thus ORDERED and DECREED that the following allegation be sustained: Allegation # 1, (Simple Assault), and this matter is continued until further order of the Court."

Only recently in the case of *In The Interest of Kilianek,* 250 Pa.Super. 394, 378 A.2d 995, 997 (1977), we were con-

fronted with a virtually identical situation and stated, per SPAETH, J., that: "By entering this order the court adopted the master's findings and recommendation as those of the court: the Act provides that '[u]nless a rehearing is ordered, the findings and recommendations [of the master] become the findings and order of the court when confirmed in writing by the judge.' 11 P.S. § 50–301(d)." Once the master recommended that appellant not be considered delinquent and the court confirmed this recommendation in writing, appellant could not be adjudicated delinquent absent a rehearing. *In The Interest of Kilianek*, supra.

Instantly, no rehearing was ordered. Nevertheless, on May 6, 1976, the court held a dispositional hearing and adjudicated appellant a delinquent child. Since no rehearing had been ordered the court's adjudication disposition of May 6, 1976 were void as a matter of law. *In The Interest of Kilianek*, supra.

Order reversed and appellant discharged.

PRICE, J., concurs in the result.

WATKINS, former President Judge, and VAN der VOORT, J., did not participate in the consideration or decision of this case.