J-S77037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: M.C.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.C.R. | No. 319 MDA 2016 |

Appeal from the Dispositional Order December 3, 2015
in the Court of Common Pleas of Berks County
Juvenile Division at No.: CP-06-JV-0000804-2015

| | |
|---|---|
| IN THE INTEREST OF: M.C.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.C.R. | No. 320 MDA 2016 |

Appeal from the Dispositional Order December 3, 2015
in the Court of Common Pleas of Berks County
Juvenile Division at No.: CP-06-JV-0000473-2015

BEFORE: PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 16, 2016**

In these consolidated cases,[1] M.C.R., a minor, appeals from the

dispositional orders entered by the juvenile court following his adjudication

---

[*] Retired Senior Judge assigned to the Superior Court.

as delinquent on the charges of arson, 18 Pa.C.S.A. § 3301(a)(1)(i), at Docket No. 473-JV-2015, and burglary, 18 Pa.C.S.A. § 3502(a)(4), at Docket No. 804-JV-2015. We affirm.

The juvenile court set forth the factual and procedural history of the arson case at Docket No. 473-JV-2015, as follows:

> Around midnight on October 13, 2014, [M.C.R.] met two female friends, V.W.[, his former girlfriend,] and A.W., also juveniles, to "hang out." As the three of them walked the streets and alleyways of the borough of Bernville, [M.C.R.] cut down Halloween decorations and smashed pumpkins. At one point, A.W. left the group and returned home.
>
> Sometime between 2:30 a.m. and 3:00 a.m., [M.C.R.] and V.W. came upon a detached garage that faced an alleyway and was located behind the house at 117 West Third Street, Bernville. A bag of trash was sitting approximately one foot in front of the garage. [M.C.R.] asked V.W. for a zipper pouch which she was carrying. He opened it and removed his lighter. He then used the lighter to set the trash bag on fire. [M.C.R.] and V.W. then ran and hid in a recycling dumpster located approximately one-half block from the garage. After a short period, [M.C.R.] and V.W. left the dumpster. Later that morning, [M.C.R.]'s mother found him and took him home and V.W. returned to her house.
>
> [M.H.] and her two children . . . were asleep in the house at 113 West Third Street when the fire was started. [M.H.] was awakened at 3:30 a.m. by the barking of her dog and the sound of someone pounding on her door. As she was proceeding downstairs to investigate, she saw smoke coming up the stairway. She then awakened her children and the three of them escaped through a patio door at the back of the house. When she exited, she saw that the garage was on fire and observed a neighbor nearby, the person who had been banging on her door.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯

[1] This Court consolidated the appeals _sua sponte_ on April 14, 2016.

[M.H.] remained at the house until the fire was extinguished. Several hours later, her younger child complained that he felt sick. She took both children to the emergency room of St. Joseph's Hospital where they were diagnosed with carbon monoxide poisoning and smoke inhalation.

Because the house sustained smoke damage from the fire, [M.H.], her boyfriend, and their two children had to live at a hotel for six weeks. Damage to the garage and house totaled approximately sixty-four thousand dollars ($64,000.00).

After an extensive investigation, the Pennsylvania State Police charged [M.C.R.] with arson [and several related offenses].

The court held a hearing on October 13, 2015 and found [M.C.R.] had committed the crime of arson.[2] On December 3, 2015, the court adjudicated him delinquent. [M.C.R.] filed a post-dispositional motion on December 8, 2015, [challenging the sufficiency and weight of the evidence supporting the arson adjudication,] which was denied on February 11, 2016[, following a hearing]. This [timely] appeal followed.

(Juvenile Court Opinion, 5/31/16, at 1-3) (some capitalization omitted).

M.C.R. filed a timely court-ordered concise statement of errors complained

of on appeal on March 18, 2016, challenging the sufficiency and weight of

_____

[2] Relevant to this appeal, among the witnesses to testify at the hearing were V.W., M.C.R., A.M.T. (a classmate of M.C.R.), and Pennsylvania State Trooper John Burns, who investigated the fire and testified as an expert for the Commonwealth. V.W. and M.C.R. essentially blamed one another for setting fire to the bag of trash. (*See* N.T. Hearing, 10/13/15, at 50, 73). On cross-examination, V.W. admitted that she set two fires subsequent to October 13, 2014, to a sweatshirt and a book, when she was with M.C.R. (*See id.* at 56-58). A.M.T. testified that M.C.R. admitted to her during class that he set the October 13, 2014 fire with a lighter. (*See id.* at 38, 40-41). She also testified that she is friends with V.W. and that she does not like M.C.R. because of his distracting behavior in class. (*See id.* at 43). Trooper Burns testified to his expert opinion that the fire was intentionally set. (*See id.* at 27).

the evidence supporting the arson adjudication. *See* Pa.R.A.P. 1925(b).

The court filed an opinion on May 31, 2016. *See* Pa.R.A.P. 1925(a).

The juvenile court set forth the factual and procedural history of the burglary case at Docket No. 804-JV-2015, as follows:

> [O]n November 20, 2015, [M.C.R.] broke into a detached, two-car garage associated with [a] premises located on Lancaster Avenue, Tulpehocken Township, Berks County, Pennsylvania, and unlawfully took twelve firearms. . . . [M.C.R.] made a written false statement to a Tulpehocken Township police officer when he stated he had received the firearms from a friend, knowing he had acquired them earlier from the burglary.
>
> The Commonwealth charged [M.C.R.] with burglary [and several other offenses arising from the incident].
>
> On December 3, 2015, [M.C.R.] signed an admission form while being represented by counsel and admitted that he committed the crime of burglary. On that same day, based on the admission, the court found beyond a reasonable doubt that [M.C.R.] committed the crime of burglary and the remaining charges were withdrawn without prejudice. Immediately thereafter, the court adjudicated [M.C.R.] delinquent on the charge of burglary and, *inter alia*, ordered him detained pending placement at George Junior Republic Special Needs Program.
>
> On December 8, 2015, [M.C.R.] filed a post-dispositional motion and a hearing was scheduled for February 11, 2016. However, this motion concerned issues that arose out of an unrelated case[, the arson adjudication at Docket No. 473-JV-2015.] The motion had nothing to do with the present case. After the hearing, the court on February 11, 2016, denied the post-dispositional motion. Thereafter, on February 23, 2016, [M.C.R.] filed this [timely] appeal.
>
> On March 3, 2016, the court ordered [M.C.R.] to file a concise statement of errors complained of on appeal. In lieu of

- 4 -

the concise statement, [M.C.R.]'s counsel, on March 18, 2016, filed a statement of intent to file an **Anders**/**McClendon** brief[3] because she believed there were no meritorious to appeal.

(Juvenile Ct. Op., 6/01/16, at 1-2) (quotation marks and some capitalization omitted).

On appeal, M.C.R. raises the following two questions for our review, both of which relate to the adjudication of delinquency for arson:

> [1.] Whether the court erred in adjudicating [M.C.R.] delinquent for [a]rson, 18 Pa.C.S.A. § 3301(a)(1)(i), where the evidence presented at trial was insufficient to prove beyond a reasonable doubt that [he] intentionally started the fire[?]
>
> [2.] Whether the adjudication of delinquency against [M.C.R.] for [a]rson, 18 Pa.C.S.A. § 3301(a)(1)(i), is so contrary to the weight of the evidence presented as to shock one's sense of justice where the testimony provided by V.W. and A.M.T. was incredible, unclear, influenced by ulterior motives, and contradicted by the testimony of other witnesses[?]

(M.C.R.'s Brief, at 6 (statement of the questions involved)).[4]

In his first issue, M.C.R. argues the Commonwealth failed to present sufficient evidence to support his adjudication of delinquency for arson. (**See** M.C.R.'s Brief, at 15-18). M.C.R. challenges the element of intent, and contends the Commonwealth failed to establish that he intentionally started

---

[3] **See** Pa.R.A.P. 1925(c)(4); **see also Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981). Counsel filed an advocate's brief in this Court, and did not file an **Anders** brief.

[4] As we more fully discuss **infra**, M.C.R. attempts to raise a third claim, relating to the burglary offense, at the end of the argument section of his appellate brief. (**See** M.C.R.'s Brief, at 22-23).

the fire. (***See id.***). M.C.R. takes issue with the testimony of the Commonwealth's expert witness, Trooper Burns, and he asserts that the trooper's testimony that the fire was intentionally set was speculative and uncertain. (***See id.*** at 16-17). M.C.R. also claims that the Commonwealth did not offer any other witnesses who could state what caused the fire. (***See id.*** at 18). This issue does not merit relief.

> In evaluating a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, our standard of review is as follows:

>> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.

>> In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

>> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re V.C.*, 66 A.3d 341, 348–49 (Pa. Super. 2013), *appeal denied*, 80 A.3d 778 (Pa. 2013) (citation omitted).

The juvenile court adjudicated M.C.R. delinquent on the charge of arson. Arson is defined, in relevant part, as follows:

**(a) Arson endangering persons.**—

(1) A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:

(i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire[.]

18 Pa.C.S.A. § 3301(a)(1)(i).

With respect to intent, the Crimes Code provides in pertinent part:

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result[.]

18 Pa.C.S.A. § 302(b)(1)(i).

Regarding expert testimony, Pennsylvania Rule of Evidence 703 provides: "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. . . ." Pa.R.E. 703. This Court has stated:

expert testimony is incompetent if it lacks an adequate basis in fact. While an expert's opinion need not be based on absolute certainty, an opinion based on mere possibilities is not competent evidence. This means that expert testimony cannot be based solely upon conjecture or surmise. Rather, an expert's assumptions must be based upon such facts as the jury would be warranted in finding from the evidence.

**Commonwealth v. Gonzalez**, 109 A.3d 711, 727 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1198 (Pa. 2015) (citation omitted).

Here, on direct examination, Trooper Burns testified "that the most likely cause of this fire was an intentionally set fire[.]" (N.T. Hearing, 10/13/15, at 27). During cross-examination, Trooper Burns further testified "I believe this is an intentionally set fire, but I wasn't priv[y] to the—my ultimate conclusion was I didn't know what caused the fire. . . . I found no accidental causes[.]" (**Id.** at 28). M.C.R. maintains that Trooper Burns' testimony in this regard was incompetent "speculation" and "does not rise to the level of certainty required to provide an expert opinion." (M.C.R.'s Brief, at 16-17; **see also id.** at 13). We disagree.

Preliminarily, we observe that M.C.R. stipulated to Trooper Burns' qualifications as a fire investigator and expert in the area of fire cause and origin, and that M.C.R. did not object to Trooper Burns' expert opinion that the fire was intentionally set. (**See** N.T. Hearing, 10/13/15, at 21-22, 27). Therefore, we agree with the Commonwealth that, to the extent M.C.R. challenges the admission of Trooper Burns' expert testimony regarding the origin of the fire, that portion of his sufficiency argument is waived. **See** Pa.R.A.P. 302(a); **see also Commonwealth v. Baumhammers**, 960 A.2d

59, 73 (Pa. 2008), *cert. denied*, 558 U.S. 821 (2009) ("[I]t is axiomatic that issues are preserved when objections are made timely to the error or offense.") (citations omitted); (*see also* Commonwealth's Brief, at 8-9).

Further, after review of Trooper Burns' testimony, we agree with the juvenile court that his opinion regarding causation of the fire was not based on speculation. The court explained:

> Trooper Burns testified that he found no accidental causes of the fire. The lack of an accidental source, plus the timeframe from when the trash was placed at the curb until the time of the fire, led the [t]rooper to conclude that the fire was intentional. He said a randomly tossed cigarette probably would not have ignited the material in the trash bags and that there was nothing outside the garage, other than the trash bag, that would have ignited in the presence of a flame. Once given the opportunity to develop his initial statement, Trooper Burns' opinion was that the cause of the fire was intentional, not accidental[.] . . .
>
> * * *
>
> . . . [Trooper Burns'] opinion was not based upon conjecture or surmise. He arrived at the scene shortly after the fire, examined the garage's interior and exterior, and applied his expertise in determining that location of the fire's origin and ruled out all accidental causes. [The court] concluded that Trooper Burns' opinion rested on a sturdy foundation and was competent to prove that the fire was intentionally set[.]

(Juvenile Ct. Op., 5/31/16, at 6-8) (record citations omitted).

We also observe M.C.R.'s sufficiency claim centered on Trooper Burns' testimony ignores V.W.'s testimony that she saw M.C.R. use his lighter to ignite the bag of trash on fire. (*See* N.T. Hearing, 10/13/15, at 49-51). Additionally, A.M.T.'s testimony corroborated V.W.'s testimony. (*See id.* at

37-40). Thus, the Commonwealth presented ample evidence in addition to Trooper Burns' testimony indicating that M.C.R. intentionally set the fire.

Therefore, viewing the evidence in the light most favorable to the Commonwealth, we determine the record fully supports the juvenile court's finding that M.C.R. intentionally set the fire. *See In re V.C.*, *supra* at 348–49. Accordingly, we conclude the evidence was sufficient to support M.C.R.'s adjudication of arson under section 3301(a)(1)(i). M.C.R.'s first issue merits no relief.

In his second issue, M.C.R. challenges the weight of the evidence supporting his adjudication of arson. (*See* M.C.R.'s Brief, at 18-21). He argues the testimony of V.W. and A.M.T. was incredible, contradictory, and motivated by bias against him. (*See id.* at 19-21). With respect to V.W., he emphasizes that he used to date her, and that she admitted responsibility for setting two other fires. (*See id.* at 19). Regarding A.M.T., M.C.R. asserts that her testimony is tainted by the fact that she is friends with V.W., and by her admission that she does not like M.C.R. because of his distracting behavior in class. (*See id.* at 21). This issue does not merit relief.

> A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the grounds that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice. Thus, we may reverse the juvenile court's adjudication of delinquency only if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the juvenile court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is

against the weight of the evidence. Rather, this Court is limited to a consideration of whether the juvenile court palpably abused its discretion in ruling on the weight claim. Hence, a juvenile court's denial of a weight claim is the least assailable of its rulings, as conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve.

*In re A.G.C.*, 142 A.3d 102, 109 (Pa. Super. 2016) (citations and quotations marks omitted).

In the instant case, the juvenile court found the testimony of V.W. and A.M.T. credible. (***See*** N.T. Hearing, 2/11/16, at 7). In support of this finding, the court stated the following:

> The court had an opportunity during the hearing to observe all the witnesses and judge their credibility based upon their testimony and demeanor. Any inconsistencies in the evidence were minor and did not seriously impair the truthfulness of V.W. and A.M.T. The credible testimony of these two witnesses was consistent on the salient fact that [M.C.R.] ignited the trash bag that caused the garage to catch fire. Thus, the adjudication of delinquency was not contrary to the weight of the evidence.

(Juvenile Ct. Op., 5/31/16, at 9-10).

In his appellate brief, M.C.R. simply asks this Court to re-weigh the evidence and reevaluate the juvenile court's credibility determinations regarding V.W. and A.M.T., a task that is beyond our scope of review. ***See In re A.G.C.***, ***supra*** at 109. Following our review of the record, we conclude that the juvenile court did not palpably abuse its discretion in denying M.C.R.'s weight of the evidence claim. ***See id***. M.C.R.'s second issue merits no relief.

Finally, we note that M.C.R. purports to raise, for the first time, a third argument near the conclusion of his brief, relating to his adjudication of burglary at Docket No. 804-JV-2015. (*See* M.C.R.'s Brief, at 22-23). Specifically, M.C.R. requests that this Court remand the matter to the juvenile court for a determination of whether its disposition is consistent with his need for treatment and rehabilitation, and the protection of the public. (*See id.*). Relying on *Commonwealth v. M.W.*, 39 A.3d 958 (Pa. 2012), M.C.R. asserts the juvenile court's determination that he committed the delinquent act of burglary does not, on its own, warrant an adjudication of delinquency. (*See* M.C.R.'s Brief, at 22); *see also M.W.*, *supra* at 959 ("hold[ing] that the Juvenile Act requires a juvenile court to find both (1) that the juvenile has committed a delinquent act; and (2) that the juvenile is in need of treatment, supervision, or rehabilitation, before the juvenile court may enter an adjudication of delinquency."). However, this argument is waived for myriad reasons.

First, M.C.R. did not raise this issue in the juvenile court; his post-dispositional motion challenged only his adjudication of delinquency for arson. *See* Pa.R.A.P. 302(a). Furthermore, in his appellate brief, M.C.R. did not include the issue in his statement of the questions involved; he did not set forth the facts relating to the burglary charge in the statement of the case; and he did not discuss his argument relating to burglary in the summary of the argument, in violation of our rules of appellate procedure.

*See* Pa.R.A.P. 2116(a), 2117(a)(4), 2118. Accordingly, the argument is waived.

Moreover, we note for the sake of completeness that M.C.R.'s claim is not supported by the record, which reflects that in entering its dispositional order for burglary, the court made an express determination that: "It is contrary to the welfare of [M.C.R.] to remain in the home of [his mother]. . . . [M.C.R.] is in need of treatment, supervision or rehabilitation. . . . [He] shall be placed in a Residential Facility at George Junior Special Needs Program which is the least restrictive type of placement that is consistent with the protection of the public and best suited to [his] treatment, supervision, rehabilitation and welfare[.]" (Dispositional Order at Docket No. 804-JV-2015, 12/03/15, at 1-2; *see also* N.T. Hearing, 12/03/15, at 2 (court adjudicating M.C.R. delinquent on charge of burglary after making determination that he was in "need of treatment, rehabilitation, and supervision[.]")). The record also reflects that the court presided over M.C.R.'s adjudicatory hearing for arson and was well aware of his background. Accordingly, this argument is waived and would not merit relief.

Dispositional orders affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2016