J-S44021-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: T.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: T.H., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 480 MDA 2020 |

Appeal from the Dispositional Order Entered January 28, 2020
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-JV-0000149-2019

| | | |
|---|---|---|
| IN THE INT. OF: T.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: T.H., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 481 MDA 2020 |

Appeal from the Dispositional Order Entered January 28, 2020
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-JV-0000459-2019

| | | |
|---|---|---|
| IN THE INT. OF: T.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: T.H., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 482 MDA 2020 |

Appeal from the Dispositional Order Entered January 28, 2020
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-JV-0000663-2019

BEFORE:  BENDER, P.J.E., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 01, 2021**

Appellant T.H. appeals from the dispositional orders entered after the juvenile court adjudicated him delinquent for acts constituting receiving stolen property, theft by unlawful taking, and misdemeanor-two indecent assault.[1] Appellant asserts that the juvenile court erred in finding he was in need treatment, supervision, or rehabilitation and the adjudication for indecent assault was against the weight of the evidence. We affirm.

Between March and September 2019, the Commonwealth filed three delinquency petitions concerning Appellant. At 149-2019, the Commonwealth alleged that Appellant stole an ATM card and cell phone. At 459-2019, the Commonwealth alleged that Appellant improperly touched his biological sister. At 663-2019, the Commonwealth alleged Appellant stole a cell phone.[2]

On October 2, 2019, the juvenile court held a hearing at which Appellant admitted to the allegations at 149-2019 and 663-2019. At 459-2019, the complainant testified that Appellant massaged her vagina, buttocks, and breasts over her clothes from when she was ten- to twelve-years old. N.T.,

---

[1] *See* 18 Pa.C.S. §§ 3925(a), 3921(a), and 3126(a)(1), respectively.

[2] Appellant was adjudicated dependent in January 2016, and the dependency court placed him in the care of the York County Children, Youth, and Families (CYF). CYF had removed Appellant from the homes on two occasions, including times when the complainant asserted the sexual assault occurred. Appellant remained in CYF's care after the allegations of sexual assault, and he took a therapeutic polygraph examination administered by Truth Verification Services, Inc. for the Commonwealth Clinical Group. The therapeutic polygraph indicated that Appellant was truthful when he asserted that he did not touch the complainant's breast or buttocks.

10/2/19, at 9-10. The incidents occurred when she and Appellant were living at home together. *Id.* at 11-12. The complainant stated that the assaults occurred "every couple of days." *Id.* at 13. The complainant also noted that Appellant lived in foster care for a time, "and then he came back and that's when he started doing it again." *Id.* at 12. The complainant stated that she did not agree to the contact nor did she give him permission to do so. *Id.* at 13-14.

Appellant cross-examined the complainant about her initial report of the assaults to her family, her statement at the Child Advocacy Center, and her allegations of rape and subsequent recantations to her school counselor and a teacher. *Id.* at 14-15, 17-18. Appellant also called a CYF caseworker, Marla Speir, to testify that Appellant was in foster care from around the time the complainant alleged Appellant started assaulting her, that he only had supervised visitations home until July 2017, and that he returned home in August 2017. *Id.* at 29. At the conclusion of the October 2, 2019 hearing, the juvenile court found that Appellant committed acts constituting misdemeanor-two indecent assault at 459-2019. *Id.* at 48. The juvenile court stated it did not find a course of conduct or felony three indecent assault. *Id.*

On January 24, 2020, the juvenile court held a dispositional hearing at which Appellant's juvenile probation officer, John Agapis, and a CYF caseworker, Steven Patton, testified. At the conclusion of the hearing, the juvenile court found Appellant was in need of treatment, supervision, and

rehabilitation, adjudicated Appellant delinquent, and placed him under probation until further order by the court.

Appellant timely filed a post-dispositional motion claiming that the adjudication for indecent assault was against the weight of the evidence. The juvenile court denied the motion.

Appellant timely appealed in each cases and filed court-ordered Pa.R.A.P. 1925(b) statements. The juvenile court issued a Rule 1925(a) opinion asserting that it did not abuse its discretion when finding that Appellant was in need of treatment, supervision, or rehabilitation,[3] and that Appellant's adjudication for acts constituting indecent assault was not against the weight of the evidence. Juvenile Ct. Op. at 2-3.

Appellant presents the following questions for review:

1. Did the [juvenile] court abuse its discretion in finding [Appellant] to be in need of treatment, supervision, or rehabilitation where [CYF] would be providing a broad range of services, [Appellant] was thriving with those services, and there was no showing that [Appellant] needed anything beyond the services he was already being provided?

2. In the alternative, was the weight of the evidence against [Appellant's] adjudication for indecent assault due to [the

---

[3] The juvenile court apparently construed Appellant's claim as a challenge to the specific disposition, not the adjudication of delinquency under 42 Pa.C.S. § 6341(b). **See** Juvenile Ct. Op., 5/11/20, at 3 (unpaginated) (noting that "indecent assault is a serious [offense] and the [complainant] must not be forgotten in the consideration of disposition" and that while "[p]olygraphs may be helpful in determining the level of treatment, . . . they should not be used to substitute the judgment of the [c]ourt, whose responsibility it is to hear all testimony and determine the credibility of the [complainant] and other witnesses").

complainant's] false or at least inaccurate testimony and the lack of any meaningful corroboration?

Appellant's Brief at 5 (some formatting altered).

Appellant first contends that the juvenile court erred in adjudicating him delinquent because he was not in need of further treatment, supervision, or rehabilitation. *Id.* at 19. Appellant emphasizes that he "was doing extremely well under the supervision of CYF." *Id.* Appellant notes that he had a job, was attending school, and was getting good grades. *Id.* at 20.

Appellant adds that the therapeutic polygraph examination indicated that he was truthful when he denied the sexual assault. *Id.* at 21-22. Appellant emphasizes that the Juvenile Probation Department initially recommended addressing the delinquency petitions by a consent decree, and later recommended only court costs, community service, and the submission of DNA and fingerprints after the Commonwealth refused a consent decree. *Id.* at 19, 21.

Appellant acknowledges that he scored a ten on a Youth Level of Service (YLS) assessment, which placed him in a moderate category for risk of reoffending and need for services. *Id.* However, Appellant asserts this score reflected circumstances beyond his control, including "the unavailability of his biological [parents]," which CYF was addressing with continued foster placement, as well as individual and family counseling and independent living training. *Id.* at 20-21.

The Commonwealth responds that the witnesses at the dispositional hearing all recommended continued supervision and therapy for Appellant. Commonwealth's Brief at 13. As to Appellant's specific arguments, the Commonwealth counters that the provision of services through CYF did not preclude the juvenile from finding that Appellant was still in need of treatment, supervision, or rehabilitation. *Id.* at 11, 13. The Commonwealth further emphasizes that a psychological evaluation of Appellant indicated mental health diagnoses that required treatment. *Id.* at 12. The Commonwealth notes that Appellant's YLS assessment indicated his needs related to "family circumstances, peer relations, and leisure/recreation" and while Appellant has improved in CYF's care, he still "has no friends or close peers and is not involved in any leisure or recreation activities." *Id.*

"The Juvenile Act grants broad discretion to juvenile courts, and we will not disturb the [juvenile] court's disposition absent a manifest abuse of discretion." *In Interest of N.C.*, 171 A.3d 275, 280 (Pa. Super. 2017) (citations omitted). The Juvenile Act provides:

> If the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such finding on the record and shall specify the particular offenses, including the grading and counts thereof which the child is found to have committed. The court shall then proceed immediately . . . to hear evidence as to whether the child is in need of treatment, supervision or rehabilitation, as established by a preponderance of the evidence, and to make and file its findings thereon. . . . If the court finds that the child is not in need of treatment, supervision or rehabilitation it shall dismiss the proceeding and discharge the child from any detention or other restriction theretofore ordered.

- 6 -

42 Pa.C.S. § 6341(b).

Under the Juvenile Act and the Pennsylvania Rules of Juvenile Court Procedure, "the juvenile court must (1) determine that the juvenile has committed a delinquent act, **and** (2) determine that the juvenile requires treatment, supervision, or rehabilitation. A determination that a child has committed a delinquent act does not, on its own, warrant an adjudication of delinquency." **Commonwealth v. M.W.**, 39 A.3d 958, 966 (Pa. 2012) (footnote omitted and emphasis in original).

Instantly, the juvenile court heard testimony from Appellant's juvenile probation officer, that Appellant underwent a psychological assessment on October 1, 2019. N.T., 1/24/20, at 7, 9. Appellant was diagnosed with an "unspecified depressive disorder, adjustment disorder, anxiety, oppositional defiant disorder, parent-child relational problem, child physical abuse victim as a child that was suspected, and rule out of conduct disorder." **Id.** at 9. The assessment recommended that CYF "operate as the lead agency in this case and that [Appellant] be placed into a group home to include mental health therapy to address his depression, anxiety, and anger management." **Id.** The officer further stated that Appellant scored a ten on the YLS assessment, placing him in a moderate 1 category for risk and need, but that the assessment would not fully account for sex offenses. **Id.** at 10. The officer noted that Appellant "continued to deny the charges in the sex offense case." **Id.**

Appellant's CYF caseworker, whom Appellant called at the dispositional hearing, testified concerning the services CYF provided to Appellant. *Id.* at 20-21. Those services included including foster care placement and individual counseling for Appellant. *Id.* at 20-21. The caseworker believed CYF involvement with Appellant would be on a long-term basis, and that CYF could provide "additional independent living skills and ultimately independent housing." *Id.* at 24. On cross-examination by the Commonwealth, the caseworker acknowledged that CYF had no ability to compel Appellant to cooperate if Appellant refused services. *Id.* at 24-25.

Based on the foregoing, the juvenile court did not abuse its discretion when finding that Appellant was in need of treatment, supervision, or rehabilitation. *See N.C.*, 171 A.3d at 280. Appellant apparently does not dispute the finding that he was in need of some level of treatment, supervision, and rehabilitation, but argues instead that CYF could have taken a lead role as recommended by the Juvenile Probation Department.[4] *See*

_____

[4] We acknowledge that Appellant has made progress while under CYF's care and cites *N.C.* for the proposition that such progress may be in a factor belying a juvenile court's finding of his need of treatment, supervision, or rehabilitation. Appellant's Brief at 20. However, Appellant's reliance on *N.C.* is misplaced because in that case, this Court held that the record as a whole did not support the juvenile court's finding that a child was in need of treatment, supervision, or rehabilitation. *See N.C.*, 171 A.3d at 283-87. We add that *N.C.* was decided before the amendment of Section 6341 establishing that the Commonwealth must prove a child's need for treatment, supervision, or rehabilitation by a preponderance of the evidence. *Compare* 42 Pa.C.S. § 6341(b) (stating the requirement that the juvenile court "hear evidence as to whether the child is in need of treatment, supervision or rehabilitation, **as**

Appellant's Brief at 19-22. Nevertheless, because the record supports the juvenile court's finding concerning the need for treatment, supervision or rehabilitation, Appellant's claim merits no relief.

Appellant next contends that the juvenile court's finding that he committed acts constituting misdemeanor-two indecent assault was against the weight of the evidence. Appellant's Brief at 23. Appellant asserts that the complainant's testimony "was vague and uncertain at best, and was even shown to be false or at least inaccurate by the objective evidence on key points." *Id.* at 23. Appellant notes that the complainant denied the allegations to her school counselor and told her teacher she "made up" the allegations. *Id.*

Further, Appellant argues that the complainant's testimony that Appellant began to assault her on the day before her tenth birthday and thereafter assaulted her every other day was "impossible." *Id.* at 24-25. Appellant notes that CYF had removed Appellant from the home he lived in with complainant at the time the complainant stated the assaults began and that he only had supervised visits until July 2017. *Id.* at 24.

Relying on the principle of "false in one, false in all," Appellant concludes that the complainant's "credibility was virtually nil" and that her "apparent

established by a preponderance of the evidence" (emphasis added)), *with N.C.*, 171 A.3d at 283 (construing the former version of Section 6341(b) as requiring proof beyond a reasonable doubt that the juvenile is in need of treatment, supervision, or rehabilitation); *see also Interest of C.B.*, 241 A.3d 677, 682 n.8 (Pa. Super. 2020) (discussing the 2018 amendment to Section 6341 and *N.C.*).

willingness to testify falsely or at least inaccurately combined with the absence of any meaningful corroboration means the [juvenile] court abused its discretion in finding the weight of the evidence was not against this adjudication." *Id.* at 25, 27-28. Appellant requests a remand for a new adjudicatory hearing regarding the sexual offense. *Id.* at 28.

The Commonwealth responds that the adjudication for indecent assault did not shock the conscience. *Id.* at 17. The Commonwealth observes that the complainant testified at the adjudicatory hearing that Appellant touched her "vagina, . . . butt, and . . . boobs" numerous times when she was ten- to twelve-years old. *Id.* at 15. The Commonwealth recognizes that the complainant had difficulties recalling specific dates, that Appellant was not in the home for extended periods of time when the assaults occurred, and that the complainant previously recanted her initial reports to her counselor and teacher. *Id.* at 15-16. Nonetheless, the Commonwealth maintains that the juvenile court's decision to credit the complainant's testimony was reasonable. *Id.* at 17. Specifically, the Commonwealth asserts that there was "a large portion of . . . time" when Appellant and the complainant lived in the same home during the relevant times. *Id.* at 16. The Commonwealth further notes that the complainant explained that she previously recanted because she was scared and did not want Appellant to get in trouble. *Id.*

The standard governing our review is well settled.

A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the grounds that the evidence was so one-sided or so weighted in

favor of acquittal that a guilty verdict shocks one's sense of justice. Thus, we may reverse the juvenile court's adjudication of delinquency only if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the juvenile court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, this Court is limited to a consideration of whether the juvenile court palpably abused its discretion in ruling on the weight claim. Hence, a juvenile court's denial of a weight claim is the least assailable of its rulings, as conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve.

*Interest of N.A.P.*, 216 A.3d 330, 336 (Pa. Super. 2019) (citations omitted and some formatting altered).

Section 3126 of the Crimes Code states in relevant part:

**(a) Offense defined.**—A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

(1) the person does so without the complainant's consent[.]

18 Pa.C.S. § 3126(a)(1).

Instantly, the juvenile court explained its decision to deny Appellant's challenge to the weight of the evidence as follows:

[The complainant] testified that [Appellant] sexually assaulted her between 10 and 12 years old. [The complainant] testified that [Appellant] has touched her with his hands on her "vagina, [her] butt, [her] boobs." [The complainant] also testified that [Appellant] would massage her body, including her butt, over her clothes. The [c]ourt found [complainant] to be credible.

- 11 -

Juvenile Ct. Op. at 2. The court further determined that Appellant's weight of the evidence challenge "serves only to raise vague questions regarding a few specific instances regarding abuse to which [the complainant] testified." *Id.* The court reasoned that it "did not find a course of conduct," but "was convinced by the credible testimony of [the complainant] that she had been touched by [Appellant] on at least one occasion in an indecent manner without her consent." *Id.* (footnotes omitted).

Following our review, we conclude that the juvenile court properly addressed Appellant's challenge to the weight of the evidence. Appellant effectively cross-examined the complainant's testimony and impeached her regarding several specific incidents. However, the court's conclusion that Appellant committed acts constituting indecent assault on at least one occasion was reasonable, and we find no abuse of discretion. *See N.A.P.*, 216 A.3d at 336. Accordingly, no relief is due.

Dispositional orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/01/2021